PEARSON, J.

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| VLADIMIR SIPERSHTEYN, | ) |
| | ) CASE NO. 4:14CV1206 |
| Plaintiff, | ) |
| | ) |
| v. | ) JUDGE BENITA Y. PEARSON |
| | ) |
| ARZEL TECHNOLOGY, INC., *et al.*, | ) |
| | ) **MEMORANDUM OF OPINION AND** |
| Defendant. | ) **ORDER** [Resolving ECF Nos. 39; 54] |

Pending before the Court are a Motion for Summary Judgment (ECF No. 39) and a Motion to Strike (EFC No. 54) filed by Defendant Arzel Technology, Inc. ("Arzel"). The Court has been advised, having reviewed the record, including the parties' briefs and the applicable law. For the reasons set forth below, the Court grants Defendant's Motion for Summary Judgment as to the age discrimination claim, denies Defendant's Motion for Summary Judgment as to the retaliation claims, and grants Defendant's Motion to Strike.

### **I. Factual and Procedural Background**

Defendant Arzel Technology, Inc. ("Arzel") is a company engaged in the manufacture of zoning controls for the heating, ventilation, and air conditioning ("HVAC") industry. ECF No. 42 at PageID #: 1462. Arzel is a closely-held, family-owned business. ECF No. 32-2 at PageID #: 1151-52. Plaintiff began working for Arzel in 1998 as the Production Supervisor. ECF No. 42 at PageID #: 1462. Plaintiff was 51 years old when he was hired. ECF No. 31-5 at PageID #: 627. Plaintiff moved to the position of Quality Control Officer in 2004. ECF No. 31-5 at PageID #: 634-35.

(4:14CV1206)

On August 27, 2012, Plaintiff had a meeting with Dennis Laughlin, President of Arzel. ECF No. 39-5 at PageID #: 1429. According to Plaintiff, the meeting concerned his energy level in relation to his quality control duties, a need for improved performance, and questions about his age and if Plaintiff would like to retire. ECF No. 31-5 at PageID #: 748. Laughlin states that he congratulated Plaintiff on his recent birthday and inquired into whether Plaintiff planned to retire before addressing some quality issues that had arisen in Plaintiff's performance at work. ECF No. 31-1 at PageID #: 222. Following this meeting, Laughlin placed a memo in Plaintiff's file that states, in part: "I [Laughlin] advised him [Plaintiff] that I wanted him to think about the level of energy and engagement he is putting forth. I recognize that he has turned 65 and that he may not be looking for this challenge." ECF No. 39-5 at PageID #1429.

On August 31, 2012 Plaintiff sent an e-mail to Laughlin stating that he was "astonished when you [Laughlin] brought up my age and enquired [sic] about my retirement plans. . . . [T]he idea of giving up work has never come to my mind." ECF No. 39-5 at PageID #: 1431. Plaintiff admits that Laughlin told him in a reply e-mail that everything would be okay and they would work it out. ECF No. 31-5 at PageID #: 770.

Aside from the comment made by Laughlin on August 27, 2012, Plaintiff can point to only one other time that his age was mentioned during his fifteen years at Arzel. Vice President of Operations Lenny Roth made a joke concerning Plaintiff's age around January 2012, but Plaintiff does not recall exactly what was said. ECF No. 31-5 at PageID #: 760-61. Plaintiff admits that neither Laughlin nor anyone else at Arzel mentioned his age at any point between August 2012 and December 2012. ECF No. 31-5 at PageID #: 826. Plaintiff further admits that neither Laughlin nor anyone else at Arzel forced or attempted to force him to retire. ECF No. 31-5 at PageID #: 770-71.

(4:14CV1206)

Sometime after the email exchange in August, Defendant began tracking Plaintiff's computer activities. Documents produced in discovery suggest that the tracking took place around September 2012. ECF No. 48-5 at PageID #: 2019. It is unclear who initiated the tracking. Roth claims that Laughlin must have initiated the tracking. ECF No. 31-4 at PageID #: 572. Laughlin says he did not initiate the tracking and Roth must have done so. ECF No. 31-1 at PageID #: 296.

From November 19 to November 21, 2012, Laughlin met with Al Zelzcer (owner of Arzel) and Howard Zelzcer to discuss the business's budget for 2013 and the need to implement cost-cutting measures. ECF No. 48-5 at PageID #: 2002. The projections for 2013, prepared by Laughlin, showed a net income of $521,396.93. ECF No. 37-1 at PageID #: 1351. Al and Howard Zelzcer were both skeptical of the projection. Al Zelzcer stated that Laughlin's projections were usually overly optimistic. ECF No. 32-2 at PageID #: 1160. Howard Zelzcer said that "every year's projections looked so rosy." ECF No. 32-3 at PageID #: 1186. During the course of the November budget meeting, a decision was reached that a position needed to be eliminated to cut costs. ECF No. 32-2 at PageID #: 1161. Plaintiff and Joe Ramunni were considered for layoff. ECF 31-1 at PageID #: 213-14. In the end, it was determined that Plaintiff's position would be the one eliminated. ECF No. 32-3 at PageID #: 1186.

On December 7, 2012, Laughlin and Roth called Plaintiff into Laughlin's office and Laughlin told Plaintiff that his job was being eliminated. ECF No. 39-5 at PageID #: 1433. Laughlin stated that the reason for the layoff was that the outlook for 2013 was not "rosy." *Id.* Plaintiff admits that his age was not mentioned during this meeting. ECF No. 31-5 at PageID #: 789.

3

(4:14CV1206)

Plaintiff filed this lawsuit in the United States District Court for the Northern District of Ohio on June 4, 2014. ECF No. 1. Plaintiff alleges three causes of action against Defendant: age discrimination in violation of the ADEA (29 U.S.C. § 623(a)), retaliation in violation of the ADEA (29 U.S.C. § 623(d)), and retaliation in violation of R.C. § 4112.02(I). Defendant moved for summary judgment following discovery. ECF No. 39. Plaintiff has filed an opposition (ECF No. 49), and Defendant has filed a reply (ECF No. 52). Defendant also moved to strike a portion of Joseph Ramunni's affidavit (ECF No. 49-1) from the record as hearsay. ECF No. 54. Plaintiff has filed an opposition (ECF No. 56), and Defendant has filed a reply (ECF No. 57). Defendant's motions are ripe for adjudication.

## **II. Legal Standard**

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of

4

(4:14CV1206)

material fact to be resolved by a jury." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). To defeat the motion, the non-moving party must "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact. *Id.* at 248. A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict. *Id.* Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily is not sufficient to defeat a motion for summary judgment. *Id.*

### III. Discussion

**A. Age Discrimination**

Plaintiff has alleged age discrimination under the ADEA. 29 U.S.C. § 623(a). Plaintiff contends that Defendant discriminated against him based on his age when his position was eliminated and his job responsibilities were filled by substantially younger employees. ECF No.

5

(4:14CV1206)

1 at PageID#: 4 ¶¶ 21-28. Defendant argues that Plaintiff can produce neither direct nor circumstantial evidence of age discrimination in the decision to eliminate Plaintiff's position. ECF No. 39-1 at PageID #: 1384, 1386.

A plaintiff may prove discriminatory motive through the use of either direct or circumstantial evidence of discrimination. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). Direct evidence of discrimination is "that evidence which, if believed, requires the conclusion that unlawful discrimination was [the] motivating factor in the employer's actions. . . . It does not require the fact finder to draw any inferences to reach that conclusion." *Sharp v. Aker Plant Services Group, Inc.*, 726 F.3d 789, 798 (6th Cir. 2013) (citation and internal quotation marks omitted). Circumstantial evidence, on the other hand, is "proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc). When a plaintiff cannot prove discrimination by way of direct evidence, the three-step framework developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) guides the analysis of discrimination claims based on circumstantial evidence. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998).

### 1. Direct Evidence

Plaintiff argues that Laughlin's questions about retirement during the August 27, 2012 meeting constitute direct evidence of age discrimination. ECF No. 49 at PageID #: 2102. Direct evidence is that which, if believed, requires the conclusion that unlawful discrimination motivated the employer's decision. *Sharp*, 726 F.3d at 798. Laughlin's statement does not require this conclusion.

6

(4:14CV1206)

Although Laughlin asked Plaintiff about his low energy, engagement with work, and his retirement plans, the questioning does not prove discriminatory animus unless the inference is drawn that Laughlin was motivated by Plaintiff's age and not his years of service with Defendant.  *Scott v. Potter*, 182 F. App'x 521, 526 (6th Cir. 2006) (discussing how age and work experience are not synonymous and that, although older employees typically retire more frequently than younger employees, an inference is required before "'Why don't you retire' can become evidence of a discriminatory animus like 'Why don't you retire; you're too old'"). Laughlin's questioning during the August 27, 2012 meeting does not compel the conclusion that age motivated Defendant's later decision to eliminate Plaintiff's job.  *Hale v. ABF Freight Sys., Inc.*, 503 F. App'x 323, 331 (6th Cir. 2012) (holding that asking about retirement plans is not direct evidence of discrimination).  Plaintiff has not shown direct evidence of age discrimination.

### 2. Circumstantial Evidence

When considering circumstantial evidence, the plaintiff must present evidence sufficient to establish a *prima face* case of discrimination.  *Ercegovich*, 154 F.3d at 350.  In order to establish a *prima facie* case of age discrimination, Plaintiff must show that: (1) he was forty-years old or older, (2) he was qualified for the position, (3) he was discharged, and (4) he was replaced by a person outside the protected class, or that similarly situated younger employees received more favorable treatment.  *Geiger v. Tower Auto*, 579 F.3d 614, 622-23 (6th Cir. 2009). In cases involving a RIF, the plaintiff must also show "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons" in order to establish the fourth element of the *prima facie* case.  *Id*. Demonstrating that younger employees were retained in positions that Plaintiff was qualified for

7

(4:14CV1206)

does not satisfy the *prima facie* case. *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990), *cert. denied*, 498 U.S. 878 (1990).

In this case, Plaintiff has not satisfied the fourth element of the *prima facie* case of age discrimination. ECF No. 39-1 at PageID #: 1387-90. Plaintiff argues that he satisfies the fourth element of the *prima facie* case with proof that Defendant retained younger employees in positions that he was qualified to perform while Plaintiff, the oldest employee at Arzel, lost his job in the RIF.[1] ECF No. 49 at PageID #: 2103. Demonstrating that younger employees were retained in positions that Plaintiff is qualified for does not, as a matter of law, satisfy the *prima facie* case in the context of workforce reductions. *Barnes*, 896 F.2d at 1465; *see also Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 266 (6th Cir. 2010) (collecting cases that held that an employer's decision to retain younger employees in a RIF did not establish a *prima facie* case of age discrimination). If evidence that younger employees were retained in jobs Plaintiff was capable and willing to perform were sufficient to establish a *prima facie* case, "then every employer who terminates an employee between 40 and 70 years of age under any circumstances, will carry an automatic burden to justify the termination." *Sahadi v. Reynolds Chem.*, 636 F.2d 1116, 1118 (6th Cir. 1980). Plaintiff has only established an age differential, which is insufficient to state a *prima facie* case of age discrimination under the ADEA. *Schoonmaker*, 595 F.3d at 267; *Sahadi*, 636 F.2d at 1118-19. Because Plaintiff has

---

[1] Plaintiff argues that a *prima facie* case is no longer relevant once Defendant has provided a legitimate non-discriminatory reason for Plaintiff's termination based on a misinterpretation of *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651 (6th Cir. 2000) and other cases that are not binding. ECF No. 49 at Page #: 2094. Plaintiff is incorrect; a *prima facie* case *must* be established before the employer's reason is considered. *See Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014); *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 674 (6th Cir. 2013).

8

(4:14CV1206)

failed to produce "additional direct, circumstantial, or statistical evidence" that proves Plaintiff's position was singled out due to his age, his age discrimination claim fails. *Geiger*, 579 F.3d at 622-23.

Plaintiff has failed to establish age discrimination through either direct or circumstantial evidence. The Court grants Defendant's Motion for Summary Judgment with respect to the age discrimination claim.

**B. Retaliation**

Plaintiff also asserted retaliation claims under the ADEA and Ohio law.[2] 29 U.S.C. § 623(d); R.C. § 4112.02(I). Plaintiff contends that Defendant retaliated against Plaintiff for complaining to Laughlin about his inquiries into Plaintiff's retirement plans. ECF No. 1 at PageID #: 5-7 ¶¶ 29-40. Defendant argues that Plaintiff has failed to set forth a *prima facie* case for retaliation and, in the alternative, that Plaintiff has failed to show that Defendant's legitimate reason was a pretext for retaliation. ECF No. 39-1 at PageID #: 1390, 1392.

Retaliation claims based on circumstantial evidence are analyzed under the *McDonnell Douglas* framework. *Fuhr*, 710 F.3d at 674. Plaintiff must first meet the burden of establishing a *prima facie* case of retaliation. If Plaintiff meets his burden, then the employer must provide a legitimate, non-retaliatory business reason for terminating Plaintiff. *Id.* If the employer meets this burden, Plaintiff must show that the proffered reason is merely pretext. *Id.* at 675. In order for Plaintiff to prevail on the retaliation claim, Plaintiff must prove not only that the proffered

---

[2] Retaliation claims are analyzed the same under federal and Ohio law. *See Garner v. Cuyahoga Cnty. Juvenile Court*, 554 F.3d 624, 639 (6th Cir. 2009) ("For retaliation claims in Ohio, [f]ederal law provides the applicable analysis for reviewing retaliation claims.") (internal quotation marks omitted); *Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir .2005) (holding that the ADEA analysis is applicable to state-law claims brought pursuant to Ohio's age-discrimination law).

9

(4:14CV1206)

reason was pretextual, but that the real reason was intentional retaliation. *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 544 (6th Cir. 2008). A *prima facie* case, coupled with sufficient evidence to find that the employer's proffered reason is false, may permit a trier of fact to conclude that the employer unlawfully retaliated against the employee. *Id.* at 545. While the burden of production shifts throughout the *McDonnell Douglas* analysis, the burden of persuasion remains with Plaintiff. *Fuhr*, 710 F.3d at 675.

### 1. Plaintiff's *Prima Facie* Case

In order to establish a *prima facie* case, Plaintiff must show that: (1) he engaged in a protected activity, (2) the employer knew about the engagement in a protected activity, (3) the employer took an adverse employment action, and (4) there is a causal connection between the protected activity and the adverse employment action. *Mickey v. Zeidler Tool & Die Co.,* 516 F.3d 516, 523 (6th Cir. 2008). Defendant argues that Plaintiff has not shown a causal connection. ECF No. 39-1 at Page ID # 1390 ("The evidence in the record is insufficient to establish the requisite causal connection between Plaintiff's August 2012 complaint of age discrimination and his November 2012 layoff.").

Plaintiff contends that temporal proximity between the email and his layoff is enough to establish a causal connection. Plaintiff sent an email to Laughlin on August 31, 2012 saying he was astonished by the inquiry into his retirement plans. ECF No. 39-5 at PageID #: 1431. The decision to eliminate Plaintiff's position was made during the course of the November 19-21, 2012 budget meeting—less than three months after Plaintiff sent the email. ECF No. 32-2 at PageID #: 1163. The Sixth Circuit has not reached consistent conclusions on whether a three-month period permits the inference of a causal connection. *Compare Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004) (holding that a period of time of slightly over

(4:14CV1206)

three months between the filing of a discrimination charge and termination is enough to infer a retaliatory motive), *with Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999) (describing a two-to-five month gap between protected activity and adverse employment action as "loose" and "tenuous").

The Court need not reconcile this tension, because there is additional evidence in the record that suggests retaliatory animus. Arzel began tracking Plaintiff's computer after Plaintiff sent the August 31, 2012 email to Laughlin saying he was astonished by Laughlin's questions. ECF No. 39-5 at PageID #: 1431. Although Arzel has tracked the computer usage of its employees before (ECF No. 31-4 at PageID #: 573-74), the tracking of Plaintiff's computer appears to have occurred around September 2012, one month after Plaintiff sent the email revealing his astonishment. ECF No. 48-5 at PageID #: 2019. Moreover, Defendant has offered inconsistent testimony as to whom initiated the tracking. Lenny Roth states that Laughlin initiated the tracking. ECF No. 31-4 at PageID #: 572. Laughlin denies ordering the tracking, and believes that Roth must have initiated it. ECF No. 31-1 at PageID #: 296. The timing of the trackingand inconsistent statements as to whom initiated the tracking encourages the inference that the tracking was ordered as a reaction to Plaintiff's email, as opposed to a less nefarious purpose such as Defendant's past practice of tracking computer usage. "The combination of this increased scrutiny with the temporal proximity of his termination occurring [around] three months after [Plaintiff emailed Laughlin to express his astonishment at Laughlin's questions] is sufficient to establish the causal nexus needed to establish a *prima facie* case." *Hamilton v. General Electric Co.*, 556 F.3d 428, 436 (6th Cir. 2009).

When all inferences are drawn in favor of the non-moving party, Plaintiff has created a genuine issue of material fact that there is a causal connection between the protected activity and

11

(4:14CV1206)

the adverse employment action. Plaintiff has satisfied all the elements of a *prima facie* case of retaliation.

### 2. Employer's Legitimate, Non-retaliatory Business Reason

As Plaintiff has established a *prima facie* case, the burden shifts to the employer to produce a legitimate, non-retaliatory reason for Plaintiff's termination. *Fuhr*, 710 F.3d at 675. Defendant meets this burden. Defendant offers a need to cut costs as the reason for Plaintiff's termination. ECF No. 39-1 at PageID #: 1391. Defendant also states that Plaintiff was selected because other Arzel employees could most easily absorb his job duties and Plaintiff had a less flexible skill set. ECF No. 31-1 at PageID #: 212, 214.

### 3. Pretext

To survive summary judgment, Plaintiff must produce sufficient evidence to permit a jury to conclude that Defendant's stated reason is a pretext for retaliation. *Fuhr*, 710 F.3d at 675. In determining whether the Plaintiff has met this burden, the Court can consider the evidence used in "establishing the plaintiff's *prima facie* case 'and inferences properly drawn therefrom,'" as the trier of fact may ultimately rely upon this evidence as well. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 n.10 (1981)). Pretext can be shown by offering evidence that the proffered reason either: (1) had no basis in fact, (2) was not what actually motivated Plaintiff's termination, or (3) was not sufficient to motivate the termination. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds*, *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). The Sixth Circuit has held "that when an 'employer . . . waits for a legal, legitimate reason to fortuitously materialize, and then uses it to cover up his true, longstanding motivations for firing the employee,' the employer's actions

12

(4:14CV1206)

constitute 'the very definition of pretext.'" *Hamilton*, 556 F.3d at 436 (quoting *Jones v. Potter, 488 F.3d 397, 408 (6th Cir. 2007)*).  The Sixth Circuit has cautioned against granting summary judgment on retaliation claims after a *prima facie* case has been established.  *Singfield*, 389 F.3d at 564 ("[A]n employer's true motivations are particularly difficult to ascertain, thereby frequently making such factual determinations unsuitable for disposition at the summary judgment stage." (internal citations omitted)).

Plaintiff first tries to show pretext by arguing that a RIF of one creates an inference of discrimination.  Plaintiff has failed to cite any controlling case law for this proposition.  According to the Sixth Circuit, "[a] workforce reduction situation occurs when business considerations cause an employer to eliminate *one or more* positions within the company." *Barnes,* 896 F.3d at 1465 (emphasis added).  Plaintiff's argument is without merit.

Plaintiff also claims that his termination had no basis in fact, because the RIF was unnecessary and a position did not need to be eliminated.  In support, Plaintiff relies on the budget projections for 2013 that predict a positive net income of $521,396.93.  ECF No. 37-1 at PageID #: 1351.  Defendant argues that it had an honest belief that it needed to cut costs despite the projection and Plaintiff has failed to rebut Defendant's honest belief.  ECF No. 52 at PageID #: 2331.  The "honest belief" doctrine protects employers when they base their decision on "particularized facts that were before it at the time the decision was made." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998).  As long as the employer has an honest belief in its proffered nondiscriminatory reason, the employee cannot establish pretext simply because this belief is ultimately shown to be incorrect.  *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001).

13

(4:14CV1206)

Arzel based its decision on the following facts available at the November budget meeting: Arzel was operating at a loss in 2010 and 2011, and the numbers for 2012 showed a net income of $59,215.20 through the end of October and a projected income of $71,058.24 for year-end 2012. ECF No 37-1 at PageID #: 1321, 1334, 1351. Additionally, Laughlin had a pattern of presenting overly optimistic budget projections. ECF No. 32-3 at PageID #: 1186; ECF No. 32-2 at PageID #: 1160. Plaintiff presents no evidence to rebut Defendant's argument. In fact, Plaintiff admits that he could see that sales for 2012 were flat or even declining. ECF No. 31-5 at PageID #: 823-24. This is sufficient to demonstrate that Arzel had an honest belief that the projected net income for 2013 would not be realized and, therefore, a position needed to be eliminated.

Alternatively, Plaintiff argues that the need to cut costs did not actually motivate the termination. Plaintiff argues that the proffered reason was pretextual because of inconsist testimony about who made the final decision to terminate Plaintiff. ECF No. 49 at PageID #: 2098. Laughlin said that he had the final say. ECF No. 31-1 at PageID #: 209. Al Zelczer said that he had the final say. ECF No. 32-2 at PageID #: 1163. Howard Zelczer stated, in both his personal capacity and representing Arzel, that Al Zelczer had the final say. ECF No. 31-7 at PageID #: 1064; ECF No. 32-3 at PageID #: 1187. It is also unclear who first raised the need to eliminate a position during the November budget meeting. Laughlin testified that he argued "vociferously" to continue the budget without the need to eliminate a position, but he was given the decision of who to lay off because "that was not the way it was gonna go." ECF No. 31-1 at PageID #: 253. Howard Zelczer suggested that Laughlin had alluded to personnel cuts in his agenda. ECF No. 31-7 at PageID #: 1066. These conflicting answers permit the inference that the company may be hiding its actual motivation. *See Tinker v. Sears, Roebuck, Co.*, 127 F.3d

14

(4:14CV1206)

519, 523 (6th Cir. 1997) (noting that inconsistency in testimony on who was responsible for the decision to terminate demonstrates a genuine issue of material fact).

Plaintiff also points to a salary chart of current and former Arzel employees since 2012 as evidence that cost-cutting was not the reason for his selection.  The employee currently holding Plaintiff's former job of Production Supervisor, Aron Freylekhman, earned a higher salary than Plaintiff, yet was not considered for elimination.  ECF No. 37-1 at PageID #: 1303.  This undercuts Defendant's contention that Plaintiff was selected solely because of his salary and the ease of having other employees assume his job responsibilities.  Although "[t]he law does not require employers to make perfect decisions," *see Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996), this evidence of salaries raises a genuine issue of material fact as to whether Plaintiff's job (1) saved Defendant the most money when eliminated, and (2) had responsibilities that could be most efficiently assumed by other employees.  Both of these issues directly implicate Defendant's articulated non-retaliatory reason for eliminating Plaintiff's job.  The salary chart plainly reflects that Plaintiff earned less than Freylekhman.  Moreover, Defendant had nine different employees, including Freylekhman, assume Plaintiff's former responsibilities as Quality Control Officer.  ECF No. 52-1 at PageID #: 2342-43 ¶ 3.  This weakens Defendant's contention that Plaintiff's job responsibilities were easily absorbed.  A jury might reasonably question why, if Defendant's motive was cutting a position with a higher salary and easily absorbed job responsibilities, it chose to have *nine* different employees do the work of one lower-salaried employee rather eliminating the more-expensive position and retaining the lower-salaried employee with prior experience.

Finally, the evidence offered to establish Plaintiff's *prima facie* case also supports an inference of pretext.  The Court can consider the evidence used in "establishing the plaintiff's

15

(4:14CV1206)

*prima facie* case and inferences properly drawn therefrom," as the trier of fact may ultimately rely upon this evidence as well. *Reeves* 530 U.S. at 143 (internal quotations omitted). Defendant tracked Plaintiff's computer usage after he had sent the email to Laughlin in August 2012 and it is unclear who initiated this tracking. A reasonable jury could view this as searching for (or even attempting to create) a legitimate reason to eliminate Plaintiff specifically instead of his position as Quality Control Officer. *See Hamilton*, 556 F.3d at 436. Moreover, the three-month period between Plaintiff's complaint to Laughlin and Defendant eliminating his position supports the inference of retaliatory motive. *Singfield*, 389 F.3d at 563 (inferring retaliatory motive from a three-month period between protected activity and adverse employment action).

The inconsistency in testimony of whom made the final decision to eliminate Plaintiff's position, the salary evidence, and Plaintiff's *prima facie* case could permit a reasonable jury to find that the elimination of Plaintiff's position was actually motivated by retaliation. Therefore, for the reasons stated above, Defendant's Motion for Summary Judgment is denied with respect to Plaintiff's federal and state retaliation claims.

**C. Defendant's Motion to Strike**

Defendant has moved to strike a portion of an affidavit attached as an exhibit to Plaintiff's opposition brief. ECF No. 54. Defendant contends that the third paragraph of Ramunni's affidavit is inadmissible hearsay. ECF No. 49-1 at PageID #: 2105 ¶ 3. The Court grants the motion to strike on the grounds that the questionable paragraph was not necessary to the Court's disposition of the motion for summary judgment. *In re Keithley Instruments, Inc., Derivative Litig.*, 599 F. Supp. 2d 908, 911 (N.D. Ohio 2009) ("[T]he court retains liberal discretion to strike filings as it deems appropriate.") (internal quotation marks omitted).

16

(4:14CV1206)

## IV.  Conclusion

For the reasons stated above, the Court grants Defendant's Motion for Summary Judgment (ECF No. 39) as to Plaintiff's age discrimination claim (Count 1), denies the motion as to the federal and state retaliation claims (Counts 2 and 3), and grants Defendant's Motion to Strike (ECF No. 54).

The case will proceed to trial on Counts 2 and 3.


IT IS SO ORDERED


August 18, 2015                                              */s/ Benita Y. Pearson*
Date                                                                  Benita Y. Pearson
                                                                           United States District Judge

17